IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RICHARD GLENN, IV            )
                             )
v.                           )       No. 3:20-0594
                             )
KILOLO KIJAKAZI[1]           )
   Commissioner of Social Security )

**To:**   The Honorable Waverly D. Crenshaw, Chief District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Supplemental Security Income ("SSI") as provided under Title XVI of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 18), to which Defendant has filed a response. (Docket No. 20.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 18) be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for former Commissioner Andrew Saul as the defendant in this lawsuit.

## I. INTRODUCTION

Plaintiff filed an application for SSI on January 19, 2018. (Transcript of the Administrative Record (Docket No. 14) at 59.)[2] He asserted that, as of the alleged disability onset date of January 1, 2018, he was unable to work because of posttraumatic stress disorder ("PTSD"), bipolar disorder, and mental illness. (AR 59-60.) Plaintiff's application was denied initially and upon reconsideration. (AR 59, 74.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Robert Martin on August 6, 2019. (AR 26.) The ALJ denied the claim on August 28, 2019. (AR 9-11.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 19, 2020 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant engaged in substantial gainful activity during the following periods: January 25, 2019 through March 31, 2019 (20 CFR 416.920(b) and 416.971 *et seq.*).

2. However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the periods the claimant did not engage in substantial gainful activity.

3. The claimant has the following severe impairments: major depressive disorder, bipolar disorder, posttraumatic stress disorder (PTSD), and antisocial personality disorder (20 CFR 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

---

[2] The Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding black Bates-stamped numbers on the bottom right corner of each page.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Can interact occasionally with supervisors and coworkers. No interaction with the general public. All interactions should be brief, job-related, and task focused, which is defined as limited to speaking to, serving, or receiving information from supervisors or coworkers. Works better with things than people. Can adapt to routine workplace changes. Can maintain concentration, persistence, and pace for such tasks with normal breaks spread throughout the day.

6. The claimant has no past relevant work (20 CFR 416.965).

7. The claimant was born on September 11, 1982 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, since January 19, 2018, the date the application was filed (20 CFR 416.920(g)).

(AR 14-21.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age,

4

education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff had no past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform a full range of work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 14-21.)

### C. Plaintiff's Assertions of Error

Plaintiff presents one assertion of error: that the ALJ failed to properly evaluate the medical opinions provided by two state agency medical consultants. (Docket No. 19 at 2.) Based on this alleged error, Plaintiff requests that the Court reverse the Commissioner's decision and award

5

benefits to Plaintiff or, alternatively, remand the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 12-13.)

Sentence four of 42 U.S.C. § 405(g) states the following:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertion of error below.

**1. The ALJ's Evaluation of Opinion Evidence.**

Plaintiff asserts that the ALJ improperly weighed the opinions of two state agency psychological consultants who reviewed medical records and provided opinions regarding the severity of Plaintiff's mental impairments: Dr. Victor O'Bryan at the initial stage of consideration, and Dr. Annette Brooks-Warren at the reconsideration level. On April 18, 2018, Dr. O'Bryan diagnosed Plaintiff with three severe impairments – "depressive, bipolar and related disorders," "personality and impulse-control disorders," and "trauma and stressor-related disorders" – and found that Plaintiff was "moderately limited" in his ability to interact appropriately with the general public and "get along with coworkers or peers without distracting them or exhibiting

6

behavioral extremes." (AR 54, 56.) On September 12, 2018, Dr. Brooks-Warren issued an opinion that concurred with Dr. O'Bryan's diagnoses and proposed functional limitations. (AR 67, 71.) The ALJ concluded that these opinions were only "partially persuasive" because they "did not adequately consider the claimant's subjective complaints of symptoms." (AR 19.)

The ALJ's analysis of medical opinions issued in connection with applications filed after March 27, 2017, such as the instant one, is governed by 20 C.F.R. § 404.1520c. The regulation makes clear that the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id*. § 404.1520c(a). The ALJ is instead directed to consider the "persuasiveness" of the medical opinions based on five categories that include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies and evidentiary requirements. *Id.* § 404.1520c(a)-(c). The two most important factors in the ALJ's evaluation are supportability and consistency. *Id.* § 404.1520c(a).

During the administrative hearing, the ALJ elicited testimony from a vocational expert regarding Plaintiff's ability to gain employment despite demonstrating certain mental functioning deficits. The ALJ first asked the vocational expert whether a hypothetical individual subject to the functional limitations that ultimately became the assigned RFC would be able to work in the national economy:

> [T]his person can interact occasionally with supervisors and co-workers, no interaction with the general public, all interaction should be brief, job-related and task-focused which is defined as limited to speaking to, serving or receiving information from supervisors or co-workers. This hypothetical person works better with things than people. This person can adapt to routine workplace changes and can maintain concentration, persistence and pace for such tasks with normal breaks spread throughout the day.

7

(AR 43-44.) The vocational expert responded that such an individual would be able to work as a scrap sorter, laundry worker, dishwasher. (AR 44.) The ALJ then posed a second hypothetical describing an individual who is unable to interact appropriately with supervisors, coworkers, and the general public. (AR 44.) The vocational expert testified that these mental limitations would prevent Plaintiff from obtaining employment. (AR 44-45.) Plaintiff's counsel then asked the vocational expert to consider a hypothetical claimant with the following restrictions:

> [T]he same hypothetical person is limited to settings with limited social demands, superficial interaction with the public, superficial work focused interaction with co-workers. And superficial is appearing true until being examined closely, that's the definition of it, a common definition, or no depth or understanding of character or not thorough, deep or complete.

(AR 45-46.) The vocational expert testified that this third hypothetical individual would also be unable to find employment. (AR 46.)

The first sentence of the third hypothetical is taken from a portion of the form opinions completed by Drs. O'Bryan and Brooks-Warren requesting that the consultants "explain in narrative form the social interaction capacities and/or limitations" of the claimant, to which they responded that Plaintiff "will do better in work settings with limited social demands – superficial interaction with the public; superficial, work-focused interactions with coworkers." (AR 56, 71.) The second sentence appears to represent counsel for Plaintiff's own definition of the word "superficial." Plaintiff effectively argues that the ALJ erred by failing to explicitly endorse his description of this portion of the consultants' opinions, which he suggests is both consistent with Plaintiff's subjective complaints and preclusive of gainful employment in light of the vocational expert's testimony. (Docket No. 19 at 11-13.)[3].

---

[3] Plaintiff initially supported his assertion that this portion of the consultants' opinions precluded employment by citing a page from the transcript of the administrative hearing in which the vocational expert testified that the limitations set forth in the RFC would allow the subject individual to work as a scrap sorter, laundry worker, dishwasher. (AR 43-44.) When Defendant

8

The Court confesses its struggle to reconcile the vocational expert's testimony that an individual limited to "superficial interaction with the public" and "superficial work-focused interactions with coworkers" would be excluded from gainful employment with her earlier testimony that an individual limited to *no* interaction with the public and "brief, job-related and task-focused" interactions with coworkers would be able to perform multiple jobs in the national economy. The first individual is able to engage in at least limited interaction with the public, while the second is barred altogether from public contact. And it is difficult to discern a material difference between "superficial work-focused" and "brief, job-related and task-focused" interactions. The first hypothetical individual's limitations therefore appear to be less restrictive than those attributed to the second individual, which would lead one to reasonably believe that the first individual would similarly be able to procure employment.

However, even assuming there is a meaningful distinction between the types of interactions described above, the ALJ was not obligated to accept the vocational expert's testimony in response to Plaintiff's counsel's hypothetical and incorporate it into the RFC. *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019) (noting that a vocational expert's answer about a hypothetical individual does not "bind" the ALJ). *See also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides great weight to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.") (internal quotations omitted). Just as the ALJ ultimately declined to include the limitations described in the second hypothetical in the RFC formulation (AR 44), so too was he permitted to reject the functional

---

noted this in his brief, Plaintiff responded by filing a motion for leave to "correct typographical error" in which he asserted that he had intended to cite pages 44 through 46 of the administrative record. (Docket No. 21 at 1.) The Court denied the motion (Docket No. 22) but will treat Plaintiff's brief as if it contained the intended citations.

9

limitations described in the third hypothetical. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) ("In fashioning the hypothetical question to be posed to the vocational expert, the ALJ is required to incorporate only those limitations accepted as credible by the finder of fact.") (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). This is particularly true when, as here, the ALJ finds that the opinions in question are less than significantly persuasive. *Cf. Moore v. Colvin*, No. 2:14-cv-455, 2015 WL 5675805, at *7 (S.D. Ohio Sept. 28, 2015) ("[T]the ALJ's [mental] RFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate those limitations into the claimant's [mental] RFC.").

Moreover, Plaintiff incorrectly suggests that the ALJ assigned a less restrictive RFC than was recommended by Drs. O'Bryan and Brooks-Warren. (Docket No. 19 at 11.) To the contrary, the ALJ concluded that their proposed functional limitations were not sufficiently restrictive, as evidenced by the public contact prohibition included in the RFC but not suggested by Drs. O'Bryan and Brooks-Warren. The Court reads the ALJ's accompanying explanation that the psychological consultants "did not adequately consider the claimant's subjective complaints of symptoms" as conveying an advantage to Plaintiff, which is consistent with the ALJ's earlier statement that, despite finding that Plaintiff's allegations regarding the severity of his condition were "not entirely consistent" with other evidence in the administrative record, the ALJ would "weigh the evidence above in the claimant's favor and reduce his [RFC] in consideration of his testimony … that is reasonably consistent with the objective medical evidence above. (AR 17, 19.)

Regardless, the Court finds that the ALJ's RFC is appropriately based on vocational expert testimony regarding functional limitations that are supported by the record. Plaintiff alleges no

10

actual error in the RFC formulation, which makes some sense given that the limitations included in the RFC are, in fact, consistent with the opinions he currently argues should have been afforded more weight. And as discussed, the lone disparity is found in the RFC's ban on public interaction, which renders the RFC *more* restrictive than the limitations contained in the consultants' opinions and therefore more favorable to Plaintiff. This prevents a finding of reversible error as to the RFC formulation. *See Kaplun v. Comm'r of Soc. Sec.*, No. 2:14-CV-0439, 2015 WL 736475, at *6 (S.D. Ohio Feb. 20, 2015), *report and recommendation adopted*, 2015 WL 1954453 (S.D. Ohio Apr. 29, 2015) ("[A]ny error in not adopting the state agency reviewers' opinions in their entirety – as opposed to the ALJ's approach of according them significant weight but giving Plaintiff the benefit of the doubt based on is testimony – would be harmless, since that approach is also more favorable to the Plaintiff.").

Plaintiff also fails to cite anything other than his own allegations to support his argument for total endorsement of the consultants' opinions or explain how such allegations support the inclusion of more restrictive functional limitations. (Docket No. 19 at 11.) This is fatal to his position given that the ALJ determined that Plaintiff's statements regarding the severity of his condition were "not entirely consistent" with the evidence of record (AR 17), a finding that Plaintiff does not challenge in his brief.

Plaintiff instead offers a perfunctory claim that the ALJ's decision "does not make reasonable sense and is actually the farthest thing from an explanation of supportability and consistency." (Docket No. 19 at 12) As noted above, however, the RFC's lone divergence from the consultants' opinions was advantageous to Plaintiff. Accordingly, the ALJ's discussion of the evidence that supports the RFC assignment (AR 16-19) serves concurrently as an explanation of the supportability and consistency of the psychological consultants' opinions. Because Plaintiff

11

points to no evidence that undermines the ALJ's evaluation of the opinion evidence, he has not carried his burden on appeal of "demonstrating that the ALJ's determination that he was not disabled is not supported by substantial evidence." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014). The assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 18) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge